(No. 24070.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STEVE JORCZAK, Plaintiff in Error.

*Opinion filed June 11, 1937.*

JAMES M. BURKE, and ROSS LEE LAIRD, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Steve Jorczak was indicted in the criminal court of Cook county for the crime of malicious mischief. He was tried by the court without a jury, found guilty and sentenced to the penitentiary. The case is here on a writ of error.

Tony Schultz, the complaining witness, was the owner of a garage at 1439 West Forty-seventh street in the city of Chicago. A part of his business was that of towing and repairing automobiles. The defendant had been engaged in the junk business but had sold most of his material at the time of the alleged crime, and had stored a small amount of unsold material in the garage owned by Schultz. Schultz testified that about September 7, 1935, while in his garage, he observed the defendant breaking a telephone box which contained coins. He ordered the defendant out, at the same time directing him to remove his material. The defendant called for the material the following day. On September 13 following, the complaining witness, Sam Wilson, and Joseph Walencik were present in the garage when the defendant came in and requested Schultz to provide bail for his brother-in-law who was being held in the office of the State's attorney. Upon the refusal of Schultz to comply with the request the defendant said, "You'll feel sorry. You will have your windows knocked out if you don't bail him out." About 2:30 o'clock of the morning of September 14, three stones or bricks were thrown through a large window of the garage and in addition to the glass, which was broken, two new automobiles were struck and damaged. Schultz was sitting in an automobile in the garage about twelve feet from the window which was broken. He immediately got out of the automobile, ran to the window, looked through the broken part and saw a man running to an automobile on the street. The man who was running looked back before he entered the automobile and Schultz saw his face and recognized him as the defendant.

Wilson and Walencik corroborated the testimony of Schultz with respect to the conversation of the defendant with Schultz about securing bail for the defendant's brother-in-law, and heard the threat which the defendant made about breaking the windows of the garage owned by Schultz.

Wilson testified that he was in the garage at the time the window was broken and immediately ran to the window and saw a man he thought was the defendant get in a Chrysler automobile and drive away.

David Goggin, a police officer, accompanied by Schultz, Walencik and another police officer, according to Goggin's testimony, went to the defendant's home on September 14, after the crime had been committed, but the defendant was not there. The police officers continued their search for the defendant until the following April. Goggin testified that on April 5, 1936, he and police officer William Simpson had been to Bloomington and when they reached the Chicago Lawn police station on their return that night an officer came in with the driver of a tow truck who said that he was working for Schultz. There had been an accident at a corner near the police station and the driver said that he had received a call to get the disabled car. The defendant had also come to take the damaged automobile to a garage operated by one Hartz. There was an argument between the two truck drivers. When the driver of the truck owned by Schultz, at the place of the accident, stated that officers Goggin and Simpson, who were not present at the place of the accident, were looking for the defendant, the latter immediately left. Officer Goggin testified that when he learned the foregoing facts at the station he and officer Simpson went to the garage operated by Hartz at Sixty-sixth street and Cicero avenue, in an effort to locate the defendant. The man in charge at the garage informed the police officers that the defendant was not employed there, but that he had left in an automobile without obtaining the permission of Hartz. Goggin and Simpson remained at the garage and the defendant afterward drove up. Goggin stepped out and told the defendant that he was a police officer but the defendant hurried away in the automobile he was driving. Officer Goggin fired three shots and then got in an automobile and he and

officer Simpson pursued the defendant. Some distance from the garage they found the automobile in the street, with the lights on and the motor still running, but no one was in it. It had a bullet hole in the top. The automobile was turned over to the owner of the garage at Sixty-sixth street and Cicero avenue. Other police officers apprehended the defendant on April 6.

The defendant testified in his own behalf. He admitted that he had a conversation with Schultz at the latter's garage in which he told Schultz about the arrest of his brother-in-law, and that he mentioned the arrest because Schultz was acquainted with his brother-in-law; that nothing was said about Schultz furnishing bail; that he, the defendant, made no threats against Schultz, but his attitude was one of friendliness; that he was not at Schultz' garage on September 14, 1935, and did not throw stones or bricks through the garage window.

The defendant testified that on September 14, 1935, he did not know whether he was at home or at the farm of a friend near Custer Park, Illinois, where he had gone about that time to repair tractors. He testified that the first knowledge he had of the window being broken in Schultz' garage was when he was arrested in April, 1936; that during the period between September, 1935, and April, 1936, he lived with his parents and sister in their home, first at 4935 South Kaminsky avenue, and that about October 1, 1935, they moved to 6206 South Kolmar avenue. After moving, the defendant testified that he left the new address at their branch post-office for forwarding mail.

The defendant further testified that he went with a truck driver for the Hartz Service Station to the place of the accident before mentioned, on April 5, 1936; that he saw a driver for Schultz' truck who immediately went away for about five minutes, and on his return asked a patrolman there to arrest the defendant for breaking the window in Schultz' garage, and mentioned that the State's attorney

was looking for the defendant. The patrolman replied that he had no warrant. Hartz was present and told the defendant to drive back to the gasoline station and find what was delaying the other truck driver; that when he reached the garage and gasoline station only a dim light was burning in the office and he saw no one inside. He turned to leave and then heard shots as if fired at him; that he drove a block away, turned the corner, left the automobile and walked to Sixty-third street, and to the gasoline station on Cicero avenue where he was arrested. On cross-examination the defendant was questioned concerning testimony given in court at a previous time by the owner of the farm near Custer Park with respect to its being a mistake that he, the defendant, was at that farm about September 13. The witness then testified that it had been ascertained that he, the defendant, was at the farm previous to the time mentioned.

Leo Rennick, a witness for the defendant, testified that he had been employed by Schultz as "a chaser;" that in Schultz' garage there was a short wave radio set which could receive police announcements of accidents, following which Schultz would send a tow wagon to the place of the accident to ascertain if the driver might be hired to tow the wrecked automobile, and, if so permitted, the wrecked automobile would be taken to Schultz' garage. The witness also testified that on September 13, 1935, the east window in Schultz' garage "was pretty well splintered up and the west window was cracked." The following morning some material was attached to the window to hold the broken parts together; that at about 1:30 o'clock of that day he saw the defendant, Wilson, and Schultz together, but did not hear their conversation; that on September 14 at about 9:00 o'clock in the morning while Schultz and Wilson were in the garage the former asked the witness if he overheard the conversation the previous day, and called the attention of the witness to the broken window

and the two automobiles which had been struck. At that time Schultz said that he "thought it was Steve on account of the argument," the day before, (apparently referring to the throwing of the stones through the window,) but that Schultz did not say he actually saw the person who threw the bricks or stones through the window. The father of the defendant testified that he never knew of a police officer inquiring for his son.

In rebuttal, police officer Simpson testified that on the night of April 5, 1936, he was at Hartz' Service Station when the defendant drove up with a Cadillac automobile; that the station was well lighted and an attendant was in the garage repairing a tire; that when the defendant left the gasoline station the witness pursued him for a distance of about four blocks east and a block and a half north, driving at the rate of thirty-five or forty miles an hour.

The testimony concerning the conditions as to light in and around the garage on the night the window was broken is, in substance, that the garage is located on the third or fourth lot west of Bishop street on Forty-seventh street. The only improvements between the garage and Bishop street are a tavern and a barber shop. The distance from the garage to Laflin street is 300 or 400 feet. There were street lights at both corners. There was a light in the garage, but none outside. The light at Bishop street supplied some light for the front of the garage. It was testified that the windows on the garage were clean. The damage to the garage was in excess of $15. It was stipulated that the defendant on March 30, 1925, in the criminal court of Cook county, had pleaded guilty to grand larceny and had been placed on probation for one year.

It is first contended by counsel for the defendant that the court erred in overruling objections to testimony introduced concerning other offenses, not related to the one charged in the indictment. The first of these objections is with respect to the testimony relating to the defendant's

breaking open a telephone box and his being ordered from the place by Schultz, and the threat subsequently made. These circumstances furnish a basis for a motive for the commission of the crime charged. The presence of a motive which would lead the accused to commit the act charged is important in the consideration of the question whether he committed it. It is always proper to prove motive when it can be done, even though it may disclose another and indictable offense. *People* v. *Scheck,* 356 Ill. 56; *People* v. *Rooney,* 355 id. 613; *People* v. *Watkins,* 309 id. 318.

Other testimony, to which objection was made, related to a telephone conversation which the witness Walencik said he overheard when the defendant represented himself to be a police officer. The defendant was not prejudiced by the testimony. There was no jury and the trial court is presumed to have acted only on competent evidence.

It is next contended that the cross-examination of witnesses for the People was unduly restricted. On the cross-examination of the complaining witness when he was being questioned about the location of street lights on the corners of Forty-seventh and Bishop, and Forty-seventh and Laflin streets, the witness answered that the lamp at Bishop street was lighted. The attorney then said, "I beg your pardon," and the witness answered, "Right where he was standing, this car." An objection to the answer was made and overruled. One of the defendant's counsel stated that the answer was not responsive. The court then said, "You take the answers he gives you." The answer, or part of an answer, "Right where he was standing, this car" did not appear to be responsive. It is not clear that the remark of the court was directed to that part of the answer, but may have been with respect to the answer as to the lamp being lighted at Bishop street, which apparently the defendant's counsel did not hear. Counsel had a right to have an answer which he did not hear repeated, but it does not appear that the defendant's counsel understood that the court was then re-

stricting the examination, for the witness was further questioned upon the subject of the lights at the street corners. The error of the court was not prejudicial. Subsequently a question was asked which the court thought was a repetition of one previously asked and the court instructed the witness not to answer. When the court's attention was directed to a difference between the questions, the second question was permitted to be asked and answered, and no harm resulted from the remark of the court.

It is urged that the cross-examination of the complaining witness was abruptly terminated by the court. The direct examination of that witness is shown in twelve pages of the record. Twenty-eight pages of the record are required to show the cross-examination of that witness. Considerable latitude appears to have been allowed in the cross-examination and the court stated that it had consumed an hour's time. The latitude to be allowed in the cross-examination of witnesses rests largely in the discretion of the trial court. (*People* v. *Jones,* 343 Ill. 291; *People* v. *Jaffe,* 339 id. 101.) There appears to have been no abuse of the trial court's discretion.

Counsel for the defendant contend that proper evidence offered on the defendant's behalf was improperly excluded. An examination of the questions discloses that two were leading, and objections to them were properly sustained. By three questions it was apparently sought to show that the complaining witness had disputes or trouble with other persons, and by other testimony it was sought to show that threats had been made against the complaining witness by other persons. The court stated that a threat against the complaining witness by another person was not material unless counsel would undertake to show that such other person or persons might have committed the act for which the defendant was being tried. There was no suggestion that such evidence would be produced. The complaining witness was not on trial, and it does not appear

that the court's ruling prejudiced the defendant. One question asked of a witness for the defendant as to what occurred on September 13, 1935, was objected to and the objection sustained. The question was subsequently answered and no harm resulted from the court's ruling.

It is urged that the court abruptly told one of the counsel for the defendant during the examination of a witness, to sit down. At another time the court asked the sheriff to "stand by." It is urged that these remarks on the part of the court indicated hostility to or impatience with counsel for the defendant. As to the first remark the court stated that it was not directed to the counsel who was conducting the examination but to his associate counsel who, in an excited manner, was telling the examining counsel what to say. At the time the second remark was made the court stated, "You know, I can't rule seven times about the same matter to an attorney who won't take the ruling." The court previously had ruled against the admission of certain proffered testimony and had cautioned the attorney that unnecessary time was being consumed in the examination of the witness. The record discloses that the defendant's counsel was not unduly limited in the examination and cross-examination of witnesses. In view of the record we cannot hold that the quoted remarks of the court constitute reversible error.

The only other contention necessary to be considered is that the evidence fails to establish the guilt of the defendant. There was evidence of the defendant's threat to break a garage window or windows, and shortly thereafter a window in the garage was broken. The complaining witness positively identified the defendant as the person he saw running from the garage when the stones or bricks were thrown through the window. Another witness, Wilson, thought the person running away at the time was the defendant. There was evidence to show that the defendant could not be found after the crime was committed and

thereafter he twice evaded police officers. While this testimony was disputed by the defendant, and he denied the commission of the crime, the trial court was in a better position to judge of the credibility of witnesses than is this court. The competent evidence was ample to sustain the conviction. There is some error in the record, but if, from the entire record, it is shown that the defendant's rights have not been prejudicially affected, it is not necessary to reverse the judgment because of harmless errors. *People* v. *Nusbaum,* 326 Ill. 518; *People* v. *Schueneman,* 320 id. 127.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*