THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TOMMY LEE SYKES, Defendant-Appellant.

Fifth District    No. 75-282

Opinion filed February 1, 1977.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the judgment of the Circuit Court of St. Clair County which found the defendant, Tommy Lee Sykes, guilty of the crime of voluntary manslaughter and sentenced him to the penitentiary for a term of not less than two years nor more than six years.

On appeal, the defendant argues: (1) that the trial court erred by giving instructions for voluntary manslaughter over defendant's objection; (2) the evidence introduced was not sufficient to support a verdict of guilty of voluntary manslaughter; (3) the trial court erred by not directing a verdict for the defendant at the close of the State's presentation of the evidence; and (4) the prosecuting attorney made improper closing statements which warrant reversal. None of these arguments merits reversal.

The defendant's defense to the indictment for the murder of Fred

Johnson centered upon a theory of an accidental shooting. According to the defendant's testimony of the events surrounding the fatal shooting, subsequent to an argument between the defendant and the deceased, in which blows were landed, the deceased left the defendant's house and returned with a 12-gauge shotgun which belonged to the defendant, but was pawned to the deceased. After a struggle for the shotgun, the defendant gained its possession and pushed the deceased out of the front door. The deceased fell on the porch steps and as he was getting up the shotgun accidentally discharged when the defendant shifted his grip on the weapon. The shot hit the deceased in the lower left back area, just above the hip, causing his death shortly thereafter.

The only other testimony of consequence was that of the defendant's common law wife, Nancy Sherman. Sherman was first interviewed by the police the day after the shooting. She said that while watching television, she heard Sykes and the deceased arguing, the screen door slam, and a shot. Two days after this narrative, she gave a similar statement but added that "Sykes came into the bedroom and picked up the shotgun * * *, then picked up a shell * * * and loaded the shotgun." At trial, Sherman's testimony embraced the substance of her later statements to the police. On cross-examination she was unable to reconcile the disparity between the two statements, but disclosed that prior to making the highly incriminating statement to the police, she had been locked in a cell for 2½ hours. At that time she was nearly six months pregnant, had a history of nervous disorders, and was on probation. Questioning by the public defender revealed that Sherman feared her probation might be revoked, especially after being told she had given a "bad statement." Further testimony revealed that Sherman missed an appointment with police, was wanted for further questioning, and was placed in a cell until the investigator arrived.

If the defendant's testimony was believed, then Johnson's death was purely accidental, thus requiring acquittal. On the other hand, as the defendant argues, if he were not believed, only a murder verdict should have been returned. This "all or nothing" theory rests upon the argument that no evidence was introduced to suggest or sustain a verdict of voluntary manslaughter; hence, it was a serious error to give such instructions.

Even though the defendant was indicted for murder, he may be convicted of any other lesser degree of homicide providing sufficient evidence exists to sustain the conviction. (*People v. Miller*, 131 Ill. App. 2d 697, 700.) Furthermore, if there is evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, an instruction defining the crime should be given. (*People v. Johnson*, 1 Ill. App. 3d 433, 434; *People v. Harris*, 8 Ill. 2d 431, 434.) Whether or not

an instruction for manslaughter should be given depends upon the evidence introduced. For this reason, it has been held that in the absence of evidence indicating that a killing was manslaughter—voluntary or involuntary—it would be error to give instructions on those theories. (*People v. Wright*, 32 Ill. App. 3d 736, 745; *People v. Caldwell*, 79 Ill. App. 2d 273, 280; *People v. Wheeler*, 57 Ill. App. 2d 452, 464.) Conversely, reversible error may be committed upon the court's refusal to give manslaughter instructions when there is sufficient evidence before the jury to justify a conviction for manslaughter. (*People v. Peeler*, 12 Ill. App. 3d 940, 944-45; *People v. Bembroy*, 4 Ill. App. 3d 522, 525-27.) From these holdings the general rule emerges that in all criminal cases the jury, as well as the defendant, should have the benefit of being fully instructed upon any theory which might be found true from the evidence presented.

■■ Regarding the case at bar, the court's instruction defining voluntary manslaughter was proper if any evidence exists in the record which, if believed by the jury, would reduce the charge of murder to manslaughter. (*People v. Vaughn*, 26 Ill. App. 3d 247, 255.) On review, this court will not weigh the evidence, and to justify the giving of an instruction, all that need be shown is the slightest amount of evidence regarding the underlying theory. (*People v. Hall*, 25 Ill. App. 3d 992, 1001.) After a careful examination of the record, two occurrences appear from which the judge could reasonably believe that voluntary manslaughter was in issue and required an instruction: (1) there was a heated argument between the defendant and the deceased, and (2) blows were exchanged (as established by the defendant's testimony).

■■ It has frequently been held that mere words can never amount to "provocation" necessary to reduce murder to manslaughter. (*People v. Ahlberg*, 13 Ill. App. 3d 1038, 1040.) Yet, reviewing courts have given more weight to the finding of the trier of fact on this issue because of their superior position in observing the witnesses and hearing all the testimony. (*People v. Robles*, 30 Ill. App. 3d 335, 336-37.) Thus, we are hesitant to say mechanically that a heated verbal exchange constitutes an insufficient basis from which manslaughter instructions could be given by the trial court judge. Even so, the judge's determination need not rest solely upon the evidence of the altercation between the defendant and the deceased. When explaining what happened, the defendant in his testimony said: "[H]e [the deceased] gets angry and hits me, and I hit him back." Mutual combat or the use of physical force has been sufficient to support the finding of serious provocation (a necessary element of voluntary manslaughter). (*People v. Applewhite*, 25 Ill. App. 3d 480; *People v. Robbins*, 1 Ill. App. 3d 651.) Plainly, the exchange of blows forms a sufficient basis from which the judge could reasonably give manslaughter instructions.

■■ For the foregoing reasons, we hold that there was ample evidence in the record to justify the giving of voluntary manslaughter instructions over the defendant's objection.

Forming the second argument on appeal, the defendant asserts that voluntary manslaughter was not proven beyond a reasonable doubt due to the insufficiency of the evidence. Because no other witnesses actually saw the shooting, the defendant argues his testimony must be given substantial weight. Furthermore, the manslaughter instructions provided an easy alternative for the jury since there was not enough evidence to find the defendant guilty of murder. In other words, the defendant maintains that the voluntary manslaughter verdict represented a compromise verdict demonstrating that the jury did not believe in the defendant's guilt beyond a reasonable doubt.

In cases such as these, the court of review will not reverse where the record discloses facts sufficient to sustain either a murder or a manslaughter conviction unless the conviction is palpably and unreasonably contradictory to the evidence presented. (*People v. Dillon*, 28 Ill. App. 3d 11.) The underlying rationale for this posture is partially based on the reviewing court's hesitancy to disturb or substitute its judgment for that of the jury's; thus, acknowledging the jury's superior position in weighing the evidence. In addition, reviewing courts feel that if enough evidence was presented from which the defendant could have been found guilty of murder, the defendant cannot complain about the verdict of manslaughter. (*People v. Young*, 11 Ill. App. 3d 609, 614.) However, where the evidence establishing the defendant's guilt is so unsatisfactory as to leave grave doubts regarding the defendant's criminal culpability, the reviewing court will reverse. *People v. Liddell*, 32 Ill. App. 3d 828, 832.

■■ Upon examining the record, we find sufficient underlying facts to sustain the jury's verdict. The testimony of Nancy Sherman establishes that the defendant entered the bedroom, grabbed the shotgun, loaded it, and returned to the living room. The nature of the fatal wound and the distance between the defendant and the decedent at the moment of the shot (six to eight feet), tend to refute the defendant's version and support the jury's conclusion. Finally, the defendant admits struggling and exchanging blows with the decedent; he was present at the time of the shooting; owned the weapon; had the shotgun in his hands, and said it fired while in his hands.

■■ Regarding the defendant's accidental shooting theory, the central issue is his credibility in the context of the physical facts. When the defendant testifies as to what happened, he must tell a reasonable story or be judged by its improbabilities. (*People v. Morehead*, 45 Ill. 2d 326, 330.) The jury is not required to accept the defense offered and summarily

reject the State's evidence just because the defendant was the only witness to the actual shooting. (*People v. Ellison*, 121 Ill. App. 2d 149.) Instead, the jury may consider other facts and circumstances in the record which tend to contradict the defendant's story or raise serious questions regarding its probability and it is the realm of the trier of fact to determine if there was a causal relationship between the defendant's conduct and the decedent's death. (*People v. Dillon*, 28 Ill. App. 3d 11, 18.) We find that the evidence presented in the record could have established the defendant's guilt of murder as well as manslaughter. The conviction for voluntary manslaughter was justified despite the defendant's argument that he was guilty of murder or nothing at all.

The defendant asserts that his testimony "is totally unimpeached." This argument fails to grasp the import and impact of Sherman's testimony upon the jury. Even though Sherman was effectively impeached by her prior statement, this does not annihilate her testimony. The discrepancies between the first police report and her testimony go to her credibility which must be determined by the jury. (*People v. McCoy*, 133 Ill. App. 3d 416.) Not only did Sherman's inconsistent statements cast some doubt upon her credibility, but the defendant's narrative also conflicts with her testimony. Once again, when this occurs, the degree of credibility and weight given to the testimony of a witness are matters for determination by the jury.

■■ The jury's verdict of guilty of voluntary manslaughter clearly demonstrates the acceptance of Sherman's testimony and the rejection of segments of the defendant's accidental shooting story. Inconsistencies in and contradictions of Sherman's testimony do not destroy her credibility as a matter of law. The resolution of these matters is within the province of the jury and we will not disturb the findings unless the evidence is so improbable or unsatisfactory to suggest a reasonable doubt of the defendant's guilt. *People v. Williams*, 60 Ill. 2d 1.

■■■ That Sherman had a history of nervous disorders and had spent some time in an institution were merely factors for the jury to consider when determining the weight to give to her testimony. Counsel for the defendant made no objection to Sherman's competency, thus it is deemed that the defendant waived the argument. The reviewing court, however, may consider the issue of competency even though it was not raised by the defendant at the trial level because of its obvious significance. (*People v. Edwards*, 55 Ill. 2d 25, 32, *cert. denied*, 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438 (1974).) We find no serious question regarding Sherman's competency to testify and her personal history does not render her testimony unworthy of belief.

Sherman's testimony established that the defendant entered the bedroom, picked up his shotgun, loaded it, and went back into the living

room, whereupon she heard the screen door slam and a shot. That the weapon was in the hands of the defendant when it fired was established by the defendant's testimony. From these facts, we are of the opinion that the only reasonable hypothesis was that the defendant fired the fatal shot. Sherman's testimony was not decimated by the fact that she did not see Sykes fire the shot. We believe the jury's verdict was satisfactory and reasonable, and that the evidence elicited from both the defendant and Sherman, when read together, supports the voluntary manslaughter conviction.

■■ The defendant contends that the trial court erred by denying his motion for a directed verdict at the close of the State's evidence. This argument has no merit for the motion was waived when the defendant introduced evidence after his motion had been denied. *People v. Curtis*, 7 Ill. App. 3d 520, 523.

■■ The defendant's final contention is that the closing argument by the prosecuting attorney was prejudicial, improper, and biased the jury. Counsel of the defendant objected three times during the prosecutor's final argument—one objection was sustained while two were overruled. The prosecutor's statements, when viewed in light of the entire record, were not of sufficient magnitude to justify reversal. Furthermore, the jury heard all of the evidence and could contrast any minor discrepancies between the prosecutor's statements and what they had heard during the trial.

Finally, we consider an issue raised by the State concerning language in the corrected mittimus of April 5, 1975. The language in the corrected mittimus purports to require defendant to serve a mandatory three years before he becomes eligible for "probation." The trial court on March 21, 1975, in sentencing the defendant stated that "the defendant should serve a period of time in the penitentiary and taken by the Department of Corrections of the State of Illinois of not less than two nor more than six years." Later on at the same hearing, the trial court went on to state, "in addition to the two and six indeterminate as hereby imposed the court imposes mandatory three year parole term contained in Court Code of Unified Corrections, etc." In the sentencing order, prepared by the court reporter and signed by the trial judge, dated March 21, 1975, but filed marked April 2, 1975, the following language appears, "sentences the defendant for a period not less than two nor more than six years in Menard Penitentiary with a mandatory three years served before defendant is eligible for probation." This language concerning the three years to be served before being eligible for "probation" was also included in the mittimus of April 2, 1975 and a corrected mittimus dated April 15, 1975.

However, at the request of counsel for defendant, a corrected mittimus

dated May 24, 1976, was filed with the records office of the Illinois State Penitentiary. This latest mittimus deleted all language concerning the serving of three years before being eligible for "parolation." This mittimus did state that, "In addition to sentence of 2 to 6, court also provides that mandatory three (3) year parole period to be included in sentence."

■■ Thus the language which the State attacks has been corrected. The language concerning the parole period in the last corrected mittimus of May 24, 1976, merely states what purports to be mandatory under section 5—8—1(e) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(e)). This court takes judicial notice that the records of the Department of Corrections reflect the corrected mittimus for the defendant filed May 24, 1976.

For the foregoing reasons, we affirm the judgment of the Circuit Court of St. Clair County.

Affirmed.

JONES and KARNS, JJ., concur.