THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOE S. MILLER, Defendant-Appellant.

(No. 69-130;

Third District—January 28, 1971.

*Rehearing denied February 22, 1971.*

Robert L. Ellison, of Rock Island, for appellant.

James N. DeWulf, State's Attorney, of Rock Island, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Joe S. Miller was found guilty by a jury of the crime of voluntary manslaughter by reason of the shooting of John Henderson in an automobile service station in Rock Island. The shooting occurred as a culmination of disputes and fights between two family groups which had been going on during the day. Following conviction, defendant was sentenced from 10 to 20 years.

On the basis of the record, it appears that around 2:00 P.M. on September 21, 1969, Pearlie Henderson and Leona Miller got into a fight about Raymond Smith. As a result of the fight, Pearlie was stabbed in the arm with a pair of scissors. When Raymond Smith heard of this stabbing he went to the home of defendant, Joe S. Miller, to talk with him. As Smith returned to his automobile, a fight developed and Smith hit Miller on the head, cutting him. Some witnesses stated that Smith caused the fight and others stated that Miller was the cause. Miller's daughter, Deanna Fleming, took her father to the hospital and then to a doctor to be treated. In the meantime, Smith went to the hospital to see Pearlie Henderson and while he was returning home. Thornlee Miller, a son of defendant, followed Smith in an automobile and struck the rear of the Smith car causing Smith to have an accident. From this point on, many people in the respective families seemed to arrive. Thornlee got out of his car with his brother, Leo, and a cousin, David Broadnax. They also had with them a German Shepherd dog, which Smith testified chased him up on the top of his car. Smith's brother, James, was passing by and saw the conflict and got out of his car along with friends, Gary Day, Henry Henderson, and the deceased John Henderson. A melee erupted and all the parties including the dog ran into a Clark Service Station nearby. The Miller faction had a fist fight with the Smith-Henderson faction in the service station. While the fight was going on, Deanna Fleming, who was taking her father home from the doctor, drove by. She recognized her brother's car and stopped to see what was the trouble. There is conflict in the testimony as to what happened thereafter.

The Smith-Henderson people and certain independent bystanders testified that defendant got out of the car and walked into the station with a rifle, and fired at John Henderson, fatally wounding him. Pearlie Henderson, the daughter of deceased, who witnessed the shooting from just inside the door testified that as defendant entered he said, "Get back. I'll kill all of you".

A independent witness testified that she saw the fight develop as Raymond Smith got out of the car and had an encounter with the dog. She saw about 10 people go into the station and began fighting. She then said she saw defendant get out of his car with a gun, and when someone asked him what he was going to do, he answered, "I'm going to kill them

all". This witness also testified that defendant went into the Clark station and fired one shot, and she saw Mr. Henderson fall in the corner. This witness also testified that the only woman she saw go into the station prior to the shooting was Pearlie Henderson; that when defendant got out of the car, defendant walked straight to the station.

A 14-year old girl who saw the incident from across the street testified that defendant was about a foot or two outside the door when he fired the shot. A witness, who was part of the Smith-Henderson faction, stated that the deceased was standing in the front part of the back room of the station with his hands down and not fighting anyone when defendant entered and fired a shot inside the station. The bullet, after passing through the decedent, struck this witness. Another one of the Smiths testified that he saw defendant fire the shot while defendant was inside the station.

Another independent witness also testified that he ran to the station to see what was going on and saw defendant get out of his car and walk to the station, and then go inside, raise the gun and fire it. He said someone shouted, "What are you going to do?", and the man with the gun answered, "I'm going to kill him". Other witnesses corroborated the testimony of such witnesses, indicating that defendant's daughter was behind defendant and entered after her father.

Police officers who investigated the situation testified as to the location of the body of Henderson and one officer testified that he found a shell casing about 21 feet outside, from the front door of the station. The officer also stated that defendant remarked after his arrest, "I meant to kill him".

On behalf of the defense, three members of the Milller faction, the defendant, his daughter Deanna Fleming, and his son Thornlee Miller, testified that just prior to the firing of the shot, Deanna Fleming was being choked by the deceased while stretched out on the floor. These witnesses testified in substance that the defendant was heard to say, "Let her go", just before the shot was fired. Deanna Fleming stated that John Henderson, the deceased, knocked her to the floor and grabbed her around the throat and shook her and swung her back and forth while she lay on her stomach.

Joe Miller, the defendant, testified. He denied making any of the statements about killing anyone which were testified to by other witnesses although he did admit that he told one officer, "I intended to kill him". Defendant testified that he saw his daughter go into the station and saw Henderson knock her down and then reached for his gun and started for the station. As he approached the station, he testified, he saw Henderson choking his daughter and swinging her from side to side. When he got about 15 or 20 feet from the station he stated that he shouted, "Let her go", and when Henderson did not respond he fired at him, and then ejected

the shell which flew over his shoulder. He also testified that when he fired the shot at the deceased, he thought his daughter was dead already from the choking.

The jury which tried the case found defendant guilty of voluntary manslaughter and he was thereafter sentenced to a term of 10 to 20 years in the penitentiary.

It is first contended that the State did not prove beyond a reasonable doubt that defendant committed the crime of voluntary manslaughter. Under the Illinois Revised Statutes, ch. 38 par. 9–2, voluntary manslaughter arises when a person kills an individual without lawful justification, where the one who did the killing was acting under a sudden and intense passion resulting from serious provocation by the one killed, or where the person intentionally or knowingly kills another when at the time of the killing he believes the circumstances to be such that, if they existed, his conduct would be justified under the law of self-defense, but his belief and conduct is unreasonable. *People v. Johnson*, 54 Ill.App.2d 27, 36.

Although all of the instructions given to the jury are not included in the abstract of record, it appears from defendant's brief that the instructions on voluntary manslaughter dealt only with the question of whether defendant unreasonably believed his daughter was in danger of receiving great bodily harm. No specific instruction apparently was given involving the "intense passion" phase of voluntary manslaughter. Defendant argues on this basis that since no such "intense passion" instruction was given, the jury must have concluded that defendant saw his daughter being menaced but he was unreasonable in concluding she was threatened with great bodily harm. Defendant contends, therefore, that only those witnesses who testified that Henderson was about to choke his daughter Deanna to death should be believed. This is not a sound contention.

■■■ Where the indictment charges murder, a jury may convict the defendant of any other lower degree of homicide. As the court stated in *People v. Johnson*, 54 Ill.App.2d 27, 37, under an indictment charging murder, the jury may return a verdict convicting the accused of any lower degree or grades of homicide included in the charge provided there is evidence to support the lower grade or degree. On the basis of the facts in the record, the jury could have found defendant guilty of murder or could have found, as they did, that defendant was guilty of voluntary manslaughter. On the basis of the record in this cause, there is ample evidence to justify the apparent jury conclusion that Deanna Fleming was not being choked by Henderson when the defendant shot Henderson. More witnesses testified that Deanna was not even in the station at the time of the shooting than testified that she was being choked. This included all

of the neutral witnesses. The only three witnesses who testified that Deanna was being seriously threatened were the defendant, Deanna, and her brother Leo. Where there is a conflict in the evidence, the trier of fact (a judge or a jury) resolves the conflict, and the jury determination in the instant case that defendant was guilty of voluntary manslaughter was not against the manifest weight of the evidence. *People v. Thomas,* 80 Ill.App.2d 88, 93–94.

■■ Defendant also contends on appeal that he should have been granted probation. He cites Illinois Revised Statutes, ch. 38 par. 117–1, in support of such contention and argues, that in non-capital cases where it is not likely that defendant will commit another offense and public interest does not require that defendant receive the penalty provided by law, he may be granted probation. We are aware of such provision but we also are aware of the fact that the trial judge has a substantial area of discretion in granting or refusing probation. In the cause before us, the trial judge stated that even though defendant had no previous convictions, he felt that the actions of defendant were "premeditated". In this connection, the trial judge emphasized that defendant took his gun with him when he went to the hospital obviously thinking that he might meet some of the Smith-Henderson family. The court also had the right to consider the seriousness of the crime and the evidence in the cause, including statements made by defendant after the shooting that he "intended to kill him". On such basis we do not believe there was an abuse of discretion in the refusal of probation.

■■ The remaining question is whether the sentence should be modified. As stated in *People v. Mitchell,* 101 Ill.App.2d 380, the power to reduce sentences should be used with caution and a sentence imposed by a trial judge, who sees the defendant and is in a far better position to appraise him and evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there is substantial reason for doing so. The penalty in the instant case was within the statutory limits. We are also conscious of the fact that defendant was driving around Rock Island with a gun and over 30 rounds of ammunition and eventually shot Henderson. We cannot say that the trial court should not have imposed a sentence of considerable severity. Defendant contends that we should be guided by the American Bar Association Standards for Sentencing referred to in *People v. Jones,* 92 Ill.App.2d 124. Under these standards it is suggested that a minimum sentence should not exceed one-third of the maximum. We also understand and have stated that such standards are not the rule in Illinois and the fact that a court from time to time will apply them does not require their application in every case. We feel, however, in the instant case, on the basis that defendant had no prior conviction, and on

review of the entire record, that this case involves a situation where an approximation of the American Bar Association Standards should be applied. The observations of the court in *People v. Lillie,* 79 Ill.App.2d 174, emphasizing the importance of giving maximum effect to the parole system in a proper case, we feel, applies to the present case. The fact that defendant has no criminal record is a significant factor in bringing us to this conclusion. We, therefore, believe that the sentence imposed on defendant, Joe S. Miller, should be modified to a term of 7 to 20 years rather than 10 to 20 years as specified by the trial court.

The judgment of the Circuit Court is, therefore, modified to change the sentence imposed upon defendant, Joe S. Miller, to a term of 7 to 20 years, and the judgment is in all other respects affirmed as modified.

Judgment modified and affirmed.

STOUDER and SCOTT, JJ., concur.