The People of the State of Illinois, Plaintiff-Appellee, *v.* Mary Gaines, Defendant-Appellant.

(No. 72-1; )

Third District—February 5, 1973.

590

John L. Barton, of Marseilles, for appellant.

Roland N. Litterst, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Peoria County. Mary Gaines, hereinafter referred to as the defendant, was indicted for murder, voluntary manslaughter and involuntary manslaughter. After trial by jury she was found guilty of voluntary manslaughter and sentenced to a term of not less than three nor more than six years in the penitentiary.

On March 23, 1971, the defendant shot and killed her husband, John Gaines. This act was the culmination of approximately five years of violent arguments and fighting between the defendant and the victim.

Taking the stand on her own behalf the defendant testified that on the day of the fatal shooting the victim had pushed her, beaten her, choked her, cursed her and threatened to kill her. She further testified that at this time she was five months pregnant and that she feared for her life.

The State introduced evidence which established that the fatal bullet entered the victim's body in such a manner as to indicate that he was shot from above and behind. There was also evidence that the victim was eating at the time he was slain.

A number of issues have been raised by the defendant which she assigns as reversible error and we will first consider her contention that the State failed to prove her guilty beyond a reasonable doubt.

■■■ It should be noted that the only defense offered by the defendant during the course of her trial was that of "self-defense." The testimony of the defendant and that of witnesses for the State is contradictory, however, it is indisputable that the relationship between the defendant and the victim husband was such as to constitute a long history of threats, violence and alcoholism. The defendant was permitted to testify as to these many threats and acts of violence which occurred on many occasions prior to the fatal day of March 23, 1971. The theory of the defense of self-defense was argued by defendant's counsel and instructions were given to the jury in regard to such a defense. Self-defense is a question of fact to be determined by the jury (*People v. Johnson*, 112 Ill.App.2d 148, 251 N.E.2d 393), and in the instant case the jury concluded that when the defendant shot and killed her husband she was not acting in self-defense. A reviewing court should not disturb a finding of guilty unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to the defendant's guilt. (*People v. Pena*, 72 Ill.App.2d 305, 219 N.E.2d 667; *People v. Miller*, 131 Ill.App.2d 697, 266 N.E.2d 427.) The evidence discloses that when the victim, John Gaines, was killed he was in the act of eating. When his body was found a pan lid of cooked corn was close by and cooked corn was in his mouth. It is also established that the gun shots which killed the victim entered his back in the upper portion of his shoulder and proceeded downward

through his body. The entry and path of the bullets are significant in that there was testimony adduced to the effect that immediately prior to the fatal shots the victim was sitting on a low stool, eating and watching television. It should also be noted that when the police arrived to investigate the shooting, the defendant stated that she was not injured which is in direct conflict with the testimony she later gave at the time of the trial. There are a number of other discrepancies in the defendant's testimony and a number of facts of violence on her part could be recited to refute her testimony that during her relationship with the victim, John Gaines, he was always the aggressor, but we believe it suffice to say and conclude that the finding of guilty of the crime of voluntary manslaughter is not so unsatisfactory or implausible as to justify any reasonable doubt as to the defendant's guilt.

■■ We now turn our attention to the defendant's contention that she was not found guilty beyond a reasonable doubt because she was acting in the defense of another and also to prevent a forcible felony. At the outset we recognize that these defenses were not raised during the trial nor were they argued before the jury. In raising the contention that she acted in the defense of another the defendant argues that she was defending her unborn child. Finding no criminal case law to support this contention she relies upon a body of law in the civil personal injury field which gives a cause of action for injury to a "viable child." This argument of the defendant is too tenuous to withstand an analytical examination but no such examination is necessary in that in the instant case clear logic dispels such an issue, since in order to protect her unborn child the defendant would have to establish that she had the right to kill in her own defense. This she failed to do.

■■ We can give no credence to the defendant's claim that she was justified in killing the victim in order to prevent the commission of a forcible felony, to-wit, aggravated battery or intimidation. This claim is for all purposes the same as the one she advocated and relied upon during her trial to the effect that she was justified in killing in order to prevent harm to herself. This defense as we have stated was not accepted by the jury. Further the record is entirely barren of any evidence of intimidation since nowhere is there any indication that threats were made by the victim, John Gaines, to the defendant with intent to cause her to perform an action without her consent. The defendant in the instance case has for the first time on appeal raised new theories of defense and claims reversible error because the trial court failed to instruct the jury in regard to such theories. It is well settled that a defendant cannot assign as error the court's failure to give instructions on theories not raised during trial. (See *People v. Kessler*, 333 Ill. 451, 164 N.E. 840.)

Nor may a defendant assign as error on appeal the failure of the trial court to give an instruction unless it was tendered. See *People v. Springs,* 51 Ill.2d 418, 283 N.E.2d 225; *People v. Damen,* 28 Ill.2d 464, 193 N.E.2d 25.

■■ The defendant next contends that the trial judge and prosecutor combined to deny her the right to a presumption of innocence and that the burden of proof was shifted to her in regard to such presumption. Twice during *voir dire* examination the trial judge defined presumption of innocence to the jurors in the following language:

> "The Defendant, under the law, is presumed to be innnocent of the charges in the Indictment and this presumption remains throughout the trial with the defendant *until you have been satisfied* by the evidence in the case beyond a reasonable doubt, of the guilt of the Defendant. * * *." (Emphasis added.)

In this statement it is apparent that the court used the word "satisfied" instead of "convinced." However, after all jurors were picked and the evidence submitted, the court instructed the jury as to presumption of innocence as requested by the defendant. This instruction, contrary to the contention of the defendant, cured any misstatement previously made by the trial judge. The defendant in arguing to the contrary relies on the case of *People v. Long,* 407 Ill. 210, 95 N.E.2d 461. However, in *Long* the real error was that the trial court refused a tendered instruction on the presumption of innocence. Such is not the situation in the instant case.

■■ The defendant also claims that the prosecutor's closing argument denied the defendant a fair trial. We do not deem it necessary to set out the prosecutor's remarks verbatim for such would be an unnecessary recital of detail. We note that one of the complained of remarks, to-wit, the prosecutor's misstatement of the law when he failed to mention the element of unlawful justification, was taken out of context in that subsequently the prosecutor stated "* * * you will also be required to find that crime not justified * * * more elaborate instructions will be given you later * * *." Another misstatement of the law alleged by the defendant is that the prosecutor expanded the definition of involuntary manslaughter to negligent or careless actions. The record discloses that the State did refer to a "reckless act", however, no objections to the statements of the prosecutor was made and the defendant cannot now raise them on appeal. (See *People v. Payton,* 82 Ill.App.2d 51, 227 N.E.2d 87.) It is further clear from the record that the trial court on several occasions admonished the jury that comments of counsel were not evidence.

■■ The defendant further complains that the prosecutor mentioned that the defendant had failed to produce medical testimony concerning

her alleged miscarriage prior to occurrence of the crime in question. We fail to find any error in such a remark since on cross-examination the defendant retreated from her previous statement that she had suffered a miscarriage when she admitted that she had not sought medical attention and in fact did not know whether or not she had suffered a miscarriage. We do not agree with the defendant that the prosecutor's remarks concerning failure to call witnesses unfairly shifted the burden to her. The cases cited by the defendant limit that proposition of law to the failure of the accused to call "occurrence" witnesses and before a reversal of conviction occurs, these occurrence witnesses must be equally accessible to the State as well as the defendant and they must bear facts as to the truth or falsity of the charges. In the instant case who could the State have called to rebut the defendant's allegations that the victim John Gaines had caused her to have a miscarriage. If any witnesses did in fact exist they were accessible only to the defendant. The comment of the prosecutor merely pointed out to the jury that her testimony was an accusation which even she admitted she could not prove. See *People v. Evans*, 7 Ill.App.3d 52, 286 N.E.2d 576.

■■■ The defendant next assigns as reversible error the remarks of the prosecutor where he referred to her as a liar and accused her of putting on an "act" on the stand. We do not agree that these remarks constitute reversible error since our Supreme Court has held it to be proper for the prosecutor to reflect unfavorably on the accused and to dwell unfavorably on the evil results of crime and to urge a fearless administration of the law. *People v. Wright*, 27 Ill.2d 497, 190 N.E.2d 287; *People v. Anderson*, 48 Ill.2d 488, 272 N.E.2d 18.

■■ The defendant urges this court to reverse her conviction on the grounds that she was denied effective assistance of counsel. She argues that additional defenses should have been raised and that her counsel failed to interject objections on crucial matters. In *People v. Washington*, 41 Ill.2d 16, at page 22, 241 N.E.2d 425, at page 428, the Supreme Court of this State quoted from *United States ex rel. Feeley v. Ragen* (7th Cir.), 166 F.2d 976, which established the following standard for determining whether retained counsel is competent:

> "If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even in-

competency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce."

We have examined the record with particularity in regard to the errors complained of by the defendant, and do not find them to be of such nature as to require reversal. On the contrary while we do not submit that the defendant had perfect representation, which is rarely, if ever, the case, we nonetheless after an examination of the record can only conclude that she was represented diligently, conscientiously and with a noteworthy degree of skill.

 Lastly it is the defendant's contention that the trial court abused its discretion by its failure to grant her petition for probation. It is well settled that a defendant in a criminal proceedings has no inherent, constitutional, or statutory right to probation. (*People v. Burdick*, 117 Ill.App.2d 314, 254 N.E.2d 148.) It is the trial judge who has the duty to determine whether or not probation should be granted and in exercising this discretion he must to the best of his ability determine if the defendant will again commit a crime and whether the public interest and rehabilitation of the individual requires incarceration. (*People v. Clay*, 2 Ill.App.3d 605, 276 N.E.2d 10.) It is the duty of this court to determine whether or not this discretion vested in the trial court was abused. In making this determination we take notice of the fact that the defendant has no serious prior criminal record; that she is the mother of eleven children, seven of whom are residing with her, and that further the probation officer concluded his investigative report with the statement "Mrs. Gaines does not appear to be a danger to herself or community and could successfully complete a probation period."

The trial court was well aware of these mitigating factors when it considered the defendant's petition for probation as it was of other factors which had to be considered. It was the trial court that heard all the testimony during the trial of the defendant and was aware of the fact that the defendant lived with the victim John Gaines from 1965 until 1969, during which year they became married. While living together both prior to and after their marriage they argued and fought almost constantly. The defendant admitted that on several occasions she had violently attacked the victim. On two occasions she had cut him with a knife. Sometime prior to shooting him fatally she had shot him in the stomach and on another occasion had struck him with a hammer. Nowhere in the record is there any evidence that the victim owned or made use of weapons as did the defendant. In fact it was the defendant, not the victim, who owned the gun which was used in the slaying of the victim.

■■ Being acquainted with all the facts concerning the habits and conduct of this defendant the trial court could rightfully conclude that she was possessed of a serious propensity for violence and that both the public interest and her need for rehabilitation required that she be incarcerated. We cannot agree with the defendant that the trial court abused its discretion in denying her application for probation.

For the reasons set forth the judgment of the circuit court of Peoria County and the sentence imposed thereon is affirmed.

Affirmed.

STOUDER, P. J., and DIXON, J., concur.