THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME J. BRADFORD *et al.*, Defendants-Appellants.

First District (1st Division)   No. 77-1835

Opinion filed November 13, 1979.—Modified on denial of rehearing December 17, 1979.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Linda D. Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants Jerome Bradford and Melvin R. Davis were charged by information with the armed robbery of a Jewel food store located at 7707 South Cottage Grove Avenue in Chicago. After a jury trial, defendants were found guilty as charged. The trial court entered judgments on the verdicts and sentenced defendant Bradford to 9 to 20 years and defendant Davis to 7 to 15 years. Both terms were to be served in the Illinois State Penitentiary.

Both defendants now appeal and raise the following issues: (1) whether they were convicted of robbery or armed robbery beyond a reasonable doubt; (2) whether the trial court erred in refusing to instruct the jury on the crime of theft; (3) whether certain remarks by the trial court deprived defendants of their right to a presumption of innocence; (4) whether the trial court abused its discretion in preventing the defense from cross-examining a prosecution witness concerning the potential civil liability of that witness for shooting a bystander; (5) whether the trial court erred in denying a defense challenge for cause of one of the jurors whose wife worked for a subsidiary of the Jewel food stores; and (6) whether the trial court abused its discretion in denying a defense motion for a continuance.

We affirm.

The first witness to testify for the State was a cashier for the Jewel food store who was working behind a service desk sorting checks and counting money at approximately 9:45 p.m. on August 21, 1976. She heard

a voice ask if she was still cashing checks, looked up, and saw two men. One of the men was standing immediately in front of her and the other was standing three feet in back and to the side of the first man. The cashier identified the first man in court as the defendant Bradford. The first man handed the cashier a note. She read the first line of the note which stated, "Put all the money in the cash drawer in a bag." She looked up at the first man and he put his right hand entirely inside a shoulder bag which he carried on his right side. The cashier then filled a white Brinks' bag with money from the cash drawer. The first man then directed the cashier to remove the money from the safe. The cashier did as she was told and gave the money to the first man. The two men then walked toward the door where they were joined by a third man. As the three men left the store, Bradford was stuffing the Brinks' bag into his shoulder bag. The cashier then heard two to four gunshots outside the store. Chicago police officers arrived and took her to the station where she saw the Brinks' bag she had given Bradford and counted the money. The bag contained $3,451. The cashier also testified that neither of the two men who approached her service desk threatened her nor did she notice that either one of them had any guns.

Another witness called by the State, one of the Jewel shoppers outside the store at the time of the incident, testified that she heard sounds like exploding firecrackers coming from between where she stood and the door to the Jewel store approximately 20 feet away. The shopper saw a security guard with a gun in front of her. She saw the two defendants fall to the ground, grabbed her small daughter, and hastened to the door of the Jewel store. The doors were locked and she stood with her daughter in the corner, facing the door, with her back to the disturbance. The shooting continued. A man unlocked the door, the shopper entered the store, and noticed that there was blood all over her daughter and herself. A bullet had lodged in her daughter's foot. At this time, the police had arrived and the defendants were lying on the ground. The shopper saw no guns other than a gun held by the security guard and did not know who had shot her daughter.

The State also called as a witness a second shopper who was in front of the Jewel food store at the time of the shooting. This second shopper heard approximately five shots but was unable to see who fired the shots or what exactly had occurred. After the shooting was over, the second shopper ran to the side of the store where she was unable to witness what was occurring in front of the store. She returned to the front of the store where she saw the security guard, one man on the ground, a number of bystanders and a Chicago police officer. She approached the police officer and told him that a bullet had grazed her arm.

Also called by the State to testify was the security guard who encountered the three men as they were leaving the Jewel food store. He indicated that he was in plain clothes in front of the store, locking the doors between 5 and 10 minutes before closing. He saw three men enter the store together. After helping a woman put her groceries into her car, he walked toward the exit doors of the store and saw the three men approaching the first of two exit doors at a rapid pace. One of the three, whom he identified as the defendant Bradford, had a camera bag over his left shoulder and was trying to insert a Brinks' bag into it. The same hand which he used to push the money into the camara bag also held a gun. Another of the three men, whom he identified as defendant Davis, was sticking a gun down into his trousers. The security guard removed his gun from its holster and when the three men were approximately 16 feet from him, he ordered them to drop their guns and the Brinks' bag. When Bradford lunged at the security guard with his gun, he shot Bradford. The security guard fired again at Davis when Davis reached for his inside trouser waistband. Davis fell to the ground. The third man escaped. During the shooting, both of defendants' guns fell to the ground. The security guard retrieved the guns and put them in his back pocket. He also retrieved the Brinks' bag which contained approximately $3,000.

During cross-examination, the security guard denied that he fired his gun five times. He also stated that he had no knowledge of having shot anybody other than the defendants. He testified that he fired his gun four times and hit each defendant twice. Although admitting he occasionally carried an extra gun, the security guard denied that he had an extra gun with him during the shooting.

Also called by the State was Officer Bukiri, who with his partner arrived at the scene less than 10 minutes after the shooting. When he arrived, Officer Bukiri saw Jewel's security guard holding a gun in his hand and a camera case over his arm. The officer observed two men who had been shot, defendant Bradford, who was handcuffed and standing against the wall, and defendant Davis, who was lying on the ground and whom Officer Bukiri handcuffed. The officer learned that the defendants were the two offenders in a robbery. The officer was told that there had been a third man who fled and the officer checked the immediate area. The security guard handed the officer two weapons which he took from his back pocket. Officer Bukiri took the clip out of the .45-caliber weapon that defendant Bradford had carried. It was loaded with six copper jacketed shells and one hollow point. The second weapon, Davis' .38 Savage, had no bullets. Officer Bukiri also examined the security guard's weapon and discovered that it contained four empty cartridges.

The only defendant to file a brief in this appeal is Jerome Bradford.

Although defendant Davis has not filed a brief in this appeal, he did move in this court to adopt the brief of defendant Bradford as his own. We allowed the motion and will thus consider each of the contentions in appellant's brief on behalf of both defendants.

■|■ ■ Defendants first contend that they were not convicted of robbery or armed robbery beyond a reasonable doubt because the cashier testified that she was not threatened by either assailant and that she saw no guns. After reviewing the evidence we find no reasonable doubt of defendants' guilt. Section 18—1(a) of the Criminal Code defines robbery as follows:

> "A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(a).)

Section 18—2(a) of the Criminal Code defines armed robbery as follows:
> "A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon." (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a).)

The use of force or the threat of the imminent use of force is an essential element in the crime of robbery and differentiates it from the crime of theft. (*People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597.) The above requirement "is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and put him 'under the temporary suspension of the power of exercising his will through the influence of the terror impressed.' " (*People v. Carpenter* (1966), 71 Ill. App. 2d 137, 143, 217 N.E.2d 337, 340.) We conclude that under the above standard the evidence supports the convictions of armed robbery beyond a reasonable doubt. That evidence showed that defendants handed the cashier a note, the first line of which read "Put all the money in the cash drawer in a bag." When the cashier looked up from the note one of the defendants moved his entire right hand into a camera bag which hung from his shoulder. There is no doubt that such a movement under such circumstances constituted a "threatening of the imminent use of force" of such a nature likely to induce the cashier to part with the money against her will.

Defendants cite *People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597, in support of their argument. In *Williams*, the defendant with both hands (one in the form of a fist) in his pocket ordered a worker to fill a bag with money. The court found insufficient evidence for attempt robbery but stated, "It would have been different if there had been evidence that [defendant] made a menacing gesture with his hand

\* \* \*." (42 Ill. App. 3d 134, 138, 355 N.E.2d 597, 601.) In the instant situation the defendant made a menacing gesture with his hand when he buried it in his shoulder bag. *Williams* is of no support to defendants' position.

■■ Defendants next argue that the trial court erred in refusing to give the jury an instruction tendered by the defense concerning the crime of theft. Defendants correctly argue that if the evidence would permit a jury to rationally find them guilty of a lesser-included offense and to acquit them of the greater offense, then they were entitled to an instruction on the lesser-included offense. (See *Keeble v. United States* (1973), 412 U.S. 205, 36 L. Ed. 2d 844, 93 S. Ct. 1993.) The trial court should instruct the jury on the lesser-included offense if there exists any evidence in the record which, if believed by the jury, would reduce the charge to the lesser-included offense. (*People v. Sykes* (1977), 45 Ill. App. 3d 674, 359 N.E.2d 897.) We note that there is a conflict in the cases as to whether theft is a lesser-included offense of robbery. There are cases which hold that theft is a lesser-included offense (*People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597; *People v. Tolentino* (1966), 68 Ill. App. 2d 480, 216 N.E.2d 191) and cases that hold to the contrary. (*People v. Yanders* (1975), 32 Ill. App. 3d 599, 335 N.E.2d 801.) This is a conflict we need not resolve because even if theft is a lesser-included offense of robbery we do not believe the trial court erred in refusing the instruction on theft. After reviewing the testimony we cannot find the slightest amount of evidence supporting the theory of theft. The defendants never testified. There was no conflict in testimony concerning the fact that one of the defendants made a menacing gesture when he put his hand inside his shoulder bag. Under such circumstances, the trial court properly refused to instruct the jury on theft. (*People v. Williams* (1975), 31 Ill. App. 3d 161, 333 N.E.2d 655.) While it is true that in *People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597, the court reduced a charge of robbery to theft even though the jury was not instructed on theft, the court there noted that there was insufficient evidence to convict the defendant of robbery and thus reduced the conviction to theft. Such is not the case here. We have already concluded that defendants were convicted of armed robbery beyond a reasonable doubt.

Defendants next argue that several statements made by the trial court to the jury erroneously stated the law and denied their right to the presumption of innocence. Related to this contention is a motion by defendant Bradford made in this court to remand the case to the trial court for an amendment of the record on appeal pursuant to Supreme Court Rule 329 (Ill. Rev. Stat. 1977, ch. 110A, par. 329). Attached to this motion were affidavits of defense counsel alleging that the record did not reflect that objections were made to each of the trial court's statements

and the fact that in each instance defendants moved for a mistrial which motions were denied by the trial court. We have taken this motion with the case and now grant the motion. We will thus consider defendants' argument in this regard on its merits.

■■ The two statements of which defendants complain were made by the trial court to prospective jurors during voir dire examination. The trial court stated to the jurors:

"[T]he defendants under the law are presumed to be innocent of the charge in the information and this presumption remains throughout the trial with the defendants until you have been satisfied by the evidence in the case beyond all reasonable doubt as to the guilt of the defendants."

The use of the word "satisfied" and not the word "convinced" rendered the above statement inaccurate. (*People v. Gaines* (1973), 9 Ill. App. 3d 589, 292 N.E.2d 500.) Shortly after the trial court made the above statement, defense counsel made a request that the trial court clarify the above statement. In an attempt to so clarify the statement, the trial court stated as follows:

"All right, then one other thing was I want you to understand that these defendants are presumed innocent in this matter up until the time that after you retire to the jury room at the conclusion of all the evidence the presumption still continues until you have made some deliberations as to guilt or innocence of one of the defendants."

Defendants argue that the above statement tended to mislead the jurors because it would lend them to believe that the presumption of innocence continued only until they had made "some deliberations" as to guilt or innocence, rather than "throughout every stage of the trial and during your deliberations on the verdict." See Illinois Pattern Instructions, Criminal, No. 2.03 (1968).

■■■ Although we agree with defendants that the above comments did not accurately state the law, we believe that those remarks caused defendants no prejudice. At the close of all the evidence in the instant case, the jury received a written instruction which accurately stated the law on the presumption of innocence. Such an instruction would in itself render harmless the prior misstatements of law. (*People v. Gaines* (1973), 9 Ill. App. 3d 589, 292 N.E.2d 500.) Moreover, on numerous occasions during the instant trial the trial court made it clear that the jury instructions stated all the law applicable to the case. In fact, prior to making the above statements on presumption of innocence, the trial court told the jurors that his remarks were not to be considered as instructions and that the court would instruct the jury in writing at the close of the case as to the

applicable law. The trial court later reinforced the fact that the jury instructions stated the applicable law when he remarked prior to instructing the jury that the "law applicable to this case is stated in these instructions." Under these circumstances, we must conclude that the objected to statements rise at most to the level of harmless error.

■■ Defendants' next contention of error concerns the trial court's ruling on a motion by the State *in limine* to prevent the defense from going into any testimony concerning civil lawsuits, civil liability, or any civil matter arising out of the incident. Defendants argue that the evidence showed that the security guard fired four shots and that two of those shots wounded a shopper and the child of another shopper. They conclude that the security guard was biased in his testimony in order to protect himself in a future civil lawsuit and the trial court's ruling prevented them from showing that bias. In order to resolve this issue, we must first clarify the trial court's ruling. The trial court indicated that he would allow the motion as to any inference of civil liability. However, he also stated that he would permit questioning concerning negligence, motive, self-preservation, or the possibility that there would be "repercussions" from the security guard's activity that date. The trial court indicated that he wanted everything relevant and material before the jury and that he would rule on specific objections at the time they were raised. While it is well settled that wide latitude should be allowed on cross-examination to establish the bias of a witness (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835), the scope of such cross-examination is largely left to the discretion of the trial court. (*People v. Hampton* (1977), 46 Ill. App. 3d 455, 360 N.E.2d 1333.) Reversible error occurs only when there is a clear abuse of this discretion which results in manifest prejudice to the defendant. (*People v. Hanks* (1974), 17 Ill. App. 3d 633, 307 N.E.2d 638.) In the instant case we find no abuse of discretion. At the time of the instant trial, no civil lawsuits had been filed against either the security guard or the food store. Further, there is no indication in the record that such a suit would be filed in the immediate future against the security guard. Under such circumstances, we believe that any testimony concerning civil liability or lawsuits would be speculative and uncertain. As such, the trial court, within its discretion, properly prohibited cross-examination on those issues.

■■■ Defendants next contend that their constitutional right to a fair and impartial jury was abridged when the trial court denied defendant Bradford's challenge for cause of one of the jurors. Defendants maintain that this juror had a potential bias against defendants because the juror's wife worked for a subsidiary of the food store where the robbery occurred. Although after reviewing the voir dire we do not detect any

indication that the above juror could not be fair and impartial, we reject defendants' contention for other reasons. At the time the trial court denied defendant Bradford's challenge for cause of the above juror, defendant Bradford had a peremptory challenge remaining. Bradford did not use this peremptory challenge to excuse the above juror. Bradford is thus in no position to complain on appeal about the fact that the above juror was unfair and biased. (*People v. Ford* (1960), 19 Ill. 2d 466, 168 N.E.2d 33.) We also note that defendant Davis never raised any objection to the qualification of the above juror and for that reason conclude that Davis has no basis for raising any objection on appeal. *People v. Bruce* (1976), 36 Ill. App. 3d 524, 344 N.E.2d 483.

Defendant Bradford raises a final argument that he was denied effective assistance of counsel at trial because the trial court failed to grant a continuance requested by his attorney, an assistant public defender. We do not believe that the chronology of events revealed in the record will support this contention. The common law record reflects that the assistant public defender was appointed to represent defendant Bradford on October 5, 1976, and that this representation continued until March 15, 1977, at which time a petition by the defendant to appear pro se was allowed. The record further reflects that approximately one-half hour before trial on April 18, 1977, Bradford had a change of heart and, at his request, the trial court again appointed an assistant public defender to represent him. Although there was a span of approximately one month immediately prior to trial during which the assistant public defender did not represent Bradford, the trial court noted for the record that the assistant public defender was in court on several occasions with the defendant in an advisory capacity during that one month period. Certainly, the instant situation is not the one that defendant posits, *viz.*, one in which defense counsel was totally unfamiliar with the case and given no time to prepare. The instant situation is very analogous to that in *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56. In *Heidelberg*, counsel represented defendant for many months prior to trial and until defendant's pro se motion was granted approximately 2½ weeks before trial. Although relieved as counsel, counsel was directed that he should be standby counsel. When trial began, counsel was reappointed and requested a three-day continuance which was denied. The court, on appeal, noting that the decision as to whether a continuance should be granted is one within the discretion of the trial court and that counsel ably represented the defendant Heidelberg, rejected defendant's claim that he was denied effective assistance of counsel. In the instant case, we likewise can see no basis for any claim that Bradford lacked effective assistance of counsel. Moreover, Bradford points to no specific area where appointed

counsel did not ably represent him. Like the situation in *Heidelberg*, the same counsel had represented Bradford for several months prior to trial and was not unfamiliar with the case. Given these facts, we see no abuse of discretion in the trial court's ruling denying Bradford's motion for a continuance.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

O'CONNOR and CAMPBELL, JJ., concur.