No. 1-24-0360

Order filed June 26, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Criminal |
| | ) | Division. |
| v. | ) | |
| | ) | No. 22 CR 13154 |
| DANTE RAY, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Michael R. Clancy, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:*   Defendant's conviction for robbery affirmed where a rational trier of fact could find that he knowingly took money from the victim after threatening imminent use of force in a single incident.

¶ 2    Following a bench trial, defendant Dante Ray was convicted of robbery and sentenced to three years in prison. On appeal, defendant challenges the sufficiency of the evidence, arguing that the State failed to prove that he used or threatened force to knowingly take the victim's property without consent. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with one count of robbery (720 ILCS 5/18-1(a) (West 2022)) and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) relating to an incident on November 3, 2022.

¶ 5     At trial, Dr. Neil Bansal (also known as Kumar Bansal) testified that around 11:45 a.m. on November 3, 2022, he was walking near the LaSalle Street and Van Buren Street train stop in Chicago when he heard a man "holler" at him from across the street and behind him. As Dr. Bansal continued walking, he was approached from behind by a man, whom Dr. Bansal identified in court as defendant, who moved "very physically close *** right in [Dr. Bansal's] personal space." Although Dr. Bansal initially testified that the two incidents involved the same man, he clarified that he could not identify the first man who yelled from across the street.

¶ 6     Defendant wore a baseball cap and a "gaiter type thing covering his nose and mouth." According to Dr. Bansal, defendant was in "very close proximity to [Dr. Bansal's] physical body and [defendant's] body language was very much in a commanding, aggressive manner." Dr. Bansal testified that defendant initially told Dr. Bansal, "I was talking to you" and "[i]f you don't want to get hurt, you'll listen and do what I say." Dr. Bansal later testified that defendant had said "something to the extent of, if you know what's good for you, if you don't want to get hurt, you're gonna do what I say." Dr. Bansal took this statement as "a threat against [his] physical self and life." Dr. Bansal testified that defendant then "began talking about how [Dr. Bansal] was supposed to humor him and be a quote/unquote real man. *** [P]eople disrespect him, don't treat him well, and that wasn't gonna happen this time; [Dr. Bansal] was gonna listen to him." Defendant then started "rambling about his personal circumstances, his life situation, [and] why he was in

Chicago." Dr. Bansal did not call to passersby because he did not know "if that would agitate this aggressor" and result in physical harm to Dr. Bansal. He did not feel free to leave because defendant "told [Dr. Bansal] that [Dr. Bansal] need[s] to listen to him and do what he tells [Dr. Bansal], otherwise [Dr. Bansal] would be hurt." Dr. Bansal did not want to escalate the situation, so he testified that he projected a calm demeanor and stated that he agreed with defendant.

¶ 7     As they stood at a street corner, defendant asked Dr. Bansal if he needed to go "in that direction." Dr. Bansal did not invite defendant to join, but defendant followed Dr. Bansal toward a more populated area. At the next intersection, defendant instructed Dr. Bansal to stop in a "commanding, aggressive, and threatening" tone. Dr. Bansal complied; defendant was "within a foot" of Dr. Bansal's face such that Dr. Bansal could "feel the spit coming out of [defendant's] mouth." Dr. Bansal did not tell defendant to leave, because Dr. Bansal "did not think it would be safe or acceptable to him to do so."

¶ 8     Defendant eventually said something about needing to buy a ticket to Ohio. Dr. Bansal testified that, "trying to wrap this up as quickly as possible," Dr. Bansal "suggested, oh, you need to buy a ticket, you need money, so here's the money; can I go?" Dr. Bansal removed all his cash—a single, $10 bill—and gave it to defendant. Dr. Bansal stated that he would not have given defendant the money had defendant not approached him, made the initial threat, followed him for 1½ blocks, and stood close to him.

¶ 9     Defendant pocketed the money and, according to Dr. Bansal, said something "along the lines of" telling Dr. Bansal "to be real man," to "be honorable to [defendant,]" and that "[defendant's] train ticket costs $60 and that $10 wasn't enough." Dr. Bansal stated that he did not

have more money, displayed his credit card holder, and showed that he had no more money. Defendant looked around, ended the conversation, and walked away.

¶ 10    After about five minutes, Dr. Bansal called the police. Chicago police officers arrived and Dr. Bansal described defendant to them. The officers left to look for defendant. About 10 minutes later, the officers returned and Dr. Bansal accompanied them to a nearby Walgreens store. There, Dr. Bansal identified defendant as the individual who had taken the money.

¶ 11    Dr. Bansal further stated during his testimony that defendant did not specifically ask for money, but he implied he wanted money. Dr. Bansal again testified that: "[defendant] told me that if I know what's good for me and I don't want to get hurt, I'll do what he says."

¶ 12    On cross-examination, defense counsel asked Dr. Bansal about his statement to detectives that defendant said "Yeah, I'm yelling at you; you disrespected me, now you're going to listen to me." Specifically, counsel asked Dr. Bansal if that was the first thing defendant said to him, and Dr. Bansal responded that that "seem[ed] correct." Dr. Bansal confirmed that defendant never mentioned a weapon or threatened the use of a weapon.

¶ 13    Dr. Bansal identified himself and defendant in surveillance footage admitted into evidence. The footage is included in the record on appeal. The video, which is approximately two minutes long with no sound, shows defendant approaching Dr. Bansal and conversing in close proximity to him, while pedestrians pass by. At one point, Dr. Bansal points, and they walk out of frame in that direction.

¶ 14    Chicago police officer Islas testified that she and Officer Navarro responded to a robbery call and located Dr. Bansal. After obtaining defendant's description, the officers located him approximately five blocks away. During a protective pat-down of defendant, Officer Islas

recovered a $10 bill and a knife. Dr. Bansal then identified defendant as the assailant, and the $10 bill as Dr. Bansal's property. A portion of Officer Islas's body-worn camera footage from that day was admitted into evidence. The footage, which is included in the record on appeal and has been viewed by this court, depicts the officers approaching and searching defendant.

¶ 15    Chicago police officer Armando Alvarez testified that, on the day of the incident, he transported Dr. Bansal to the corner of Wacker Drive and Jackson Boulevard, where Dr. Bansal identified defendant as the person who had robbed him.

¶ 16    The State proffered a certified copy of defendant's felony conviction for aggravated battery with a deadly weapon, which the court entered into evidence.

¶ 17    In closing, the State argued that defendant's initial threat put Dr. Bansal in fear for his life. Defendant did not physically push Dr. Bansal, "but that threat is always there." Defendant's counsel argued that no robbery occurred, because defendant merely approached Dr. Bansal to talk and never demanded money.

¶ 18    The court found defendant guilty of robbery and not guilty of unlawful possession of a weapon by a felon. It found Dr. Bansal a "credible witness throughout his entire testimony" and that the surveillance video supported his testimony regarding how defendant approached. The court found that defendant committed a series of continuous acts constituting robbery. The court explained that defendant threatened Dr. Bansal with imminent force, implicitly demanded money by talking "about how [defendant] needs money, needs a ticket to *** Ohio," took the $10 from Dr. Bansal, and then explicitly demanded money by stating that the "ticket costs $60 and $10 is not enough" and that Dr. Bansal "is supposed to do better."

¶ 19    Defendant filed a motion for a new trial, arguing that the State failed to prove him guilty of robbery beyond a reasonable doubt, among other issues. The trial court denied the motion. Following a hearing, the court sentenced defendant to three years in prison with one year of mandatory supervised release.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant argues that the evidence was insufficient to prove him guilty of robbery.

¶ 22    When a defendant challenges the sufficiency of the evidence, this court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial, and circumstantial evidence alone may be sufficient to sustain a conviction. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Circumstantial evidence is evidence that may allow a trier of fact to infer connected facts that reasonably and usually follow (*People v. McAndrew*, 2024 IL App (1st) 230881, ¶ 45), or that permit reasonable inferences relevant to the defendant's guilt or innocence (*People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19).

¶ 23    The trier of fact determines the credibility of the witnesses, resolves conflicting evidence, weighs the evidence, and draws reasonable inferences from the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trier of fact need not "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Spears*, 2024 IL App (1st) 181491, ¶ 194. On appeal, the reviewing court must

draw all reasonable inferences from the record in the State's favor. *People v. Harvey*, 2024 IL 129357, ¶ 19.

¶ 24     We will not substitute our judgment for that of the trier of fact regarding witness credibility and the weight given to each piece of evidence. *Jackson*, 232 Ill. 2d at 280-81. We will reverse a conviction based on insufficient evidence only where the evidence is so improbable or unsatisfactory that reasonable doubt exists as to the defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 25     To sustain defendant's conviction for robbery, the State was required to prove beyond a reasonable doubt that he knowingly took property "from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2022). A defendant acts knowingly "when he is consciously aware that his conduct is practically certain to cause a particular result." *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26; see also 720 ILCS 5/4-5 (West 2022). A defendant's knowledge is generally established by circumstantial evidence rather than direct proof. *People v. Wade*, 2025 IL App (1st) 231683, ¶ 25.

¶ 26     "[T]he gist of the offense of robbery is the force or fear of violence directed at the victim in order to deprive him of his property." *People v. Dennis*, 181 Ill. 2d 87, 104 (1998). A taking by the use or threat of force is proven by showing the victim felt fear "of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person" and whether this occurred may be implied by the circumstances. *People v. Hollingsworth*, 120 Ill. App. 3d 177, 178-79 (1983). "[S]ome concurrence between the defendant's threat of force and the taking of the victim's property" must occur to constitute a robbery. *People v. Lewis*, 165 Ill. 2d 305, 339 (1995).

¶ 27    The force or threat of force need not immediately cause the victim to comply. *People v. Merchant*, 361 Ill. App. 3d 69, 74-75 (2005). Rather, the threat of force may be a part of a series of events constituting a single incident that results in the defendant taking the victim's property. *Id.* Whether force or threat of force was used is for the trier of fact to decide, and we "will not disturb that decision unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt." *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999).

¶ 28    In viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of robbery beyond a reasonable doubt. *McLaurin*, 2020 IL 124563, ¶ 22. First, defendant's statement that if Dr. Bansal did not want to get hurt, he would do what defendant said threatened imminent physical force. Defendant made that threat with his face partially obscured by a mask and while standing near Dr. Bansal and displaying an aggressive demeanor. See *People v. Bradford*, 78 Ill. App. 3d 869, 874-75 (1979) (aggressively putting a hand in camera bag, accompanied by a demand for money, deemed a threat). Second, defendant used the threat of force to cause Dr. Bansal to part with his money, and Dr. Bansal's fear of defendant's threat of physical force was reasonable under the circumstances.

¶ 29    Specifically, defendant's threat of physical force was followed by his remarks about needing money to buy a train ticket. Dr. Bansal surrendered $10 to defendant, who then demanded more money. Dr. Bansal testified that he would not have given defendant the money but for defendant's initial threat and conduct in following Dr. Bansal and standing close to him. Dr. Bansal also testified that he gave the money and asked defendant, "[C]an I go?" A rational trier of fact could reasonably find that defendant was consciously aware that his actions would result in taking

Dr. Bansal's property against his will. See *id*. (demand for money and implicit threat sufficient to convict the defendant of robbery).

¶ 30   The trial court found Dr. Bansal's entire testimony credible, a determination we defer to, and the surveillance video corroborated his account of defendant's approach, proximity to Dr. Bansal, and movement with Dr. Bansal. *Jackson*, 232 Ill. 2d at 280-81. That evidence was sufficient to prove defendant guilty of robbery as "the testimony of a single witness, if positive and credible, is sufficient to convict." *Siguenza-Brito*, 235 Ill. 2d at 228. We therefore do not find the evidence so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt of robbery. *Beauchamp*, 241 Ill. 2d at 8.

¶ 31   Nevertheless, defendant contends that Dr. Bansal consented to the "taking" when Dr. Bansal offered defendant the money without any demand by defendant.

¶ 32   Here, the court found that defendant implicitly demanded money when recounting the need for money to purchase a train ticket, and explicitly demanded money when he told Dr. Bansal that "$10 is not enough" and Dr. Bansal was "supposed to do better." Defendant's contention that a taking against Dr. Bansal's will did not occur asks this court to reweigh the evidence and substitute our judgment for that of the trier of fact, which we will not do. *Jackson*, 232 Ill. 2d at 280-81.

¶ 33   Defendant next contends that the State failed to show that he threatened Dr. Bansal with imminent force to take Dr. Bansal's property, because Dr. Bansal inconsistently recounted defendant's threats at trial and admitted to not paying attention to what defendant had said. Defendant contends that even if the evidence established that he used threatening language, Dr. Bansal did not reasonably fear imminent force. Defendant also disputes the reasonableness of any fear where Dr. Bansal offered sympathetic responses while defendant shared his life "story" and

gave defendant money to persuade defendant to leave. Defendant further contends that his statement could not be reasonably understood as a threat of "imminent" physical force as the threat was not sufficiently proximate to Dr. Bansal's surrender of his money.

¶ 34 We are not persuaded that any minor inconsistency in Dr. Bansal's testimony defeats the trial court's finding that defendant threatened him. Minor inconsistencies in a witness's testimony may affect the weight of the evidence, but do not automatically raise reasonable doubt of guilt. See *People v. Corral*, 2019 IL App (1st) 171501, ¶¶ 85-87 (trier of fact tasked with assessing "how flaws in parts of a witness's testimony *** affect the credibility of the whole"). Any inconsistency in Dr. Bansal's testimony regarding the wording of defendant's threat was for the trial court to resolve, and the court found that defendant threatened Dr. Bansal with imminent force. *Id*. We will not assess credibility or reweigh the evidence on this factual finding. *Beauchamp*, 241 Ill. 2d at 8.

¶ 35 We are also not persuaded by defendant's challenges to the reasonableness of Dr. Bansal's fear. Defendant's initial statement as recounted by Dr. Bansal, "[i]f you don't want to get hurt, you'll listen and do what I say," was more than a speculative threat of future harm. Rather, a rational trier of fact could construe it as a direct threat of immediate physical violence if Dr. Bansal did not cooperate. Although a brief time elapsed between defendant's threat of harm and his demand for money, defendant's interim conduct of following and staying "very physically close" to Dr. Bansal created a continuous series of events constituting a present threat. *Merchant*, 361 Ill. App. 3d at 74-75.

¶ 36 As to the other people passing by Dr. Bansal and defendant on the street during the encounter, Dr. Bansal explained that he decided not to seek help because he did not know "if that would agitate this aggressor and if that would result in physical harm to me." Given defendant's

initial, direct threat, his close physical proximity to Dr. Bansal, and his threatening demeanor, Dr. Bansal's fear of imminent force "was of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person." *Hollingsworth*, 120 Ill. App. 3d at 178-79. The State presented sufficient evidence that defendant threatened Dr. Bansal with imminent force sufficient to inspire a reasonable fear and overcome Dr. Bansal's will.

¶ 37 Defendant finally contends that the State failed to prove he acted knowingly in taking Dr. Bansal's money by means of threat, because Dr. Bansal outwardly manifested a calm demeanor, did not appear threatened, and consensually gave defendant the money. Defendant claims that, when Dr. Bansal offered the money, defendant "had no reason to know that Dr. Bansal was offering the money out of fear rather than compassion" arising from defendant's "story." However, "[t]he mental state of knowledge is ordinarily proven by circumstantial evidence, as opposed to direct proof," *People v. Wehrwein*, 209 Ill. App. 3d 71, 81 (1990), and to find a defendant guilty beyond a reasonable doubt, the trier of fact need not "search out all possible explanations consistent with innocence." (Internal quotation marks omitted.) *People v. Spears*, 2024 IL App (1st) 181491, ¶ 194. Here, before Dr. Bansal gave defendant the money, defendant had aggressively approached Dr. Bansal with his face covered and stated that if Dr. Bansal did not want to get hurt, he would do as defendant said. Regardless of Dr. Bansal's calm reaction, there was ample evidence for a rational trier of fact to conclude defendant knew Dr. Bansal gave him the money out of fear rather than compassion. See *People v. Mayo*, 2017 IL App (2d) 150390, ¶ 30 ("Whether a defendant acted with the required mental state is a question for the trier of fact. [Citation.] An appellate court should not substitute its judgment for that of the trier of fact, unless the judgment at trial was inherently implausible or unreasonable.").

¶ 38    In conclusion, the evidence showed that defendant knowingly threatened Dr. Bansal with imminent physical force and used this threat to take Dr. Bansal's personal property. The evidence was not so improbable or unsatisfactory that reasonable doubt exists as to defendant's guilt of robbery. *Beauchamp*, 241 Ill. 2d at 8.

¶ 39                                   III. CONCLUSION

¶ 40    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41    Affirmed.